**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| THIRTY MADISON, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 3:19-cv-338 |
| | ) | |
| STERLING PHARMACEUTICAL | ) | |
| SERVICES, LLC, ROBERT G. | ) | **JURY TRIAL DEMANDED** |
| FLYNN, ROBERT T. FLYNN, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, Thirty Madison, Inc. ("Thirty Madison") and files this Complaint against Sterling Pharmaceutical Services, LLC ("Sterling"), Robert G. Flynn ("Flynn Sr."), and Robert T. Flynn ("Flynn Jr."), respectfully showing as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Thirty Madison, is a Delaware Corporation with a principal place of business at 130 Madison Avenue, 6th Floor, New York, New York, 10016.

2.     For purposes of assessing diversity jurisdiction, Thirty Madison is a citizen of the States of both New York and Delaware.

3.     On information and belief, Defendant Flynn Sr. is a citizen of the State of Missouri and may be served with summons and Complaint by service at his residential address at 9383 Caddyshack Circle, St. Louis, Missouri, 63127 or at his business address at the offices of Sterling at 109 S 2nd St., Dupo, IL 62239.

4.      On information and belief, Defendant Flynn Jr. is a citizen of the State of Illinois and may be served with Summons and Complaint by service at his residential address at 5 Hunters Glen Drive, Maryville, Illinois 62062 or at his business address at the offices of Sterling at 109 S 2nd St., Dupo, IL 62239.

5.      Defendant Sterling is a Missouri limited liability company with a principal place of business at 109 S 2nd St., Dupo, IL 62239.

6.      Sterling may be served with Summons and Complaint by service on its registered agent Flynn Sr. at 9383 Caddyshack Circle, St. Louis Missouri, 63127 or by service at its principal place of business at the offices of Sterling at 109 S 2nd St., Dupo, IL 62239.

7.      On information and belief, the sole members of Sterling are Flynn Sr. and Flynn Jr., who are citizens of Missouri and Illinois, respectively.  Thus, for purposes of assessing diversity jurisdiction, Sterling is a citizen of both Missouri and Illinois.

8.      On information and belief, Defendants Flynn Jr., Flynn Sr., Sterling (and potentially others affiliated with them) have knowingly conspired together to accomplish the tortious injuries at issue in this Complaint, including perpetuation of the fraudulent representation set forth below, such that it is appropriate and just to hold each conspirator liable for the full extent of such tortious conduct.

9.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.

10.     This Court has personal jurisdiction over Defendants in that they continuously and systematically conduct business in the Southern District of Illinois, and they have engaged and continue to engage in violations of Plaintiff Thirty Madison's rights in this judicial district.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that (1) the corporate Defendant has its principal place of business in this jurisdiction; (2) the individual Defendants work at the corporate defendant's principal place of business in this jurisdiction; and (3) a substantial part of the events and omissions that give rise to this action occurred in this judicial district.

## BACKGROUND

12.     Thirty Madison provides personal care products and services through a number of brands on a subscription basis whereby consumers enter into a subscription agreement to access and receive regular product regimens to address specific cosmetic and other conditions.

13.     Under its "Keeps" brand, Thirty Madison makes available and arranges for consumers to receive convenient and recurring mail-order delivery of an over-the-counter ("OTC") topical Minoxidil treatment (the "Minoxidil Products").  Minoxidil is a generic version of Rogaine® (the brand name of the innovator drug), which is typically recommended for men experiencing hair loss on the top of their head and crown.

14.     To supply Minoxidil Products to its customers in the most reliable, convenient and cost effective manner, Thirty Madison contracts with FDA-registered contract pharmaceutical manufacturers to make and supply Minoxidil Products under a duly approved Abbreviated New Drug Application ("ANDA") required for generic products.

15.     In early 2018, Thirty Madison began looking for additional contract pharmaceutical manufacturers to supply Minoxidil Products for its Keeps brand.

16.     In May of 2018, Thirty Madison contacted Sterling and began speaking with Flynn Jr. about Sterling's ability to manufacture Minoxidil Products for Thirty Madison. While Flynn Jr. said that Sterling would have to acquire the licensing rights to the ANDA required for the Minoxidil Products, he stated that Sterling acquired ANDA licensing rights all the time and this would not be an issue.

17.     In June of 2018, based on representations that Sterling had the ability to manufacture the Minoxidil Products, Demetri Karagas, President of Thirty Madison, traveled to Dupo, Illinois to tour Sterling's manufacturing facility and meet with some of Sterling's personnel to further discussions about utilizing Sterling to manufacture and supply the Minoxidil Products.

18.     During these discussions, Flynn Jr., on behalf of himself and Sterling, repeatedly assured Thirty Madison that Sterling was able to manufacture the Minoxidil Products.  Among other things, Flynn Jr., on behalf of himself and Sterling, represented they (a) accessed and reviewed the ANDA for the Minoxidil Products; (b) assessed the anticipated size of each of the batches of the Minoxidil Products based on the ANDA; and (c) selected specific equipment suited for manufacturing.  Flynn Jr. even went so far as to show the President of Thirty Madison the specific tanks and machines Sterling would use.

19.     Both during and after the tour, Flynn Jr., on behalf of himself and Sterling, represented Sterling would be able to supply the Minoxidil Products within a few months of receipt of an order from Thirty Madison.

20.     In addition to the statements made in paragraphs 16, 18, 19 and among other statements, Flynn Jr. and Sterling made the following representations to Thirty Madison prior to

Plaintiff's submission of ordering the Minoxidil Products from Sterling (collectively "Pre-Order Representations"):

- Sterling has extensive experience manufacturing a wide variety of medications and performed well on client audits and FDA inspections;

- Manufacturing Minoxidil was absolutely within Sterling's capability;

- Sterling would use various pieces of specific laboratory equipment in Sterling's facility – ranging from processing tanks to labeling machines –to manufacture Minoxidil in specific amounts based on the batch records (pharmaceutical manufacturing instructions) Sterling would be using from the Minoxidil ANDA;

- Sterling was able to procure all of the raw materials necessary to manufacture Minoxidil, including the core active pharmaceutical ingredient ("API");

- Sterling had in fact obtained a license to use the Minoxidil ANDA from a large generic pharmaceutical manufacturer and was ready to proceed with manufacturing the Minoxidil Products; and

- Sterling had sourced and ordered a large quantity of the specific pharmaceutical packaging necessary for the Minoxidil Product;

21.    Upon information and belief, Flynn Sr. was aware of and contributed to the Pre-Order Representations.

22.    Based on the Pre-Order Representations by Sterling and its principals, on or about July 9, 2018, Thirty Madison placed an initial order for 30,000 bottles of Minoxidil Products from Sterling for a total of $117,500 ("First Purchase Order").  Sterling accepted the order amounts and

sent Thirty Madison an invoice for a 50% down payment of the amounts owed for the First Purchase Order.

23.     In early October of 2018, Flynn Jr. and Sterling represented that manufacturing was in progress.

24.     In November 2018, the President of Thirty Madison informed Flynn Jr. that Thirty Madison was having issues supplying Minoxidil Products because of issues with other contract pharmaceutical manufacturers and that Thirty Madison needed to make additional orders from Sterling to ensure inventory did not run out prohibiting Thirty Madison from being able to fulfill its obligations to customers.   Flynn Jr. and Sterling repeated the representations that Sterling was making progress manufacturing the Minoxidil Products and would be able to fulfill Thirty Madison's needs ("Progress Representations").

25.     Based on the Pre-Order Representations and the Progress Representations, Thirty Madison placed additional orders for Minoxidil Products from Sterling and, with Flynn Jr. and Sterling's knowledge and at their direction, also placed orders with and paid other vendors for the component parts, such as labels, leaflets, and boxes, that Sterling would need to assemble the packages of Minoxidil Products.

26.     Between July of 2018 and January 1, 2019, Thirty Madison ordered an additional 270,000 bottles of Minoxidil Product from Sterling through two separate purchase orders (the Second and Third Purchase Orders) for a combined price of $1,030,498. Sterling again accepted the order amounts and prices and sent Thirty Madison a single invoice for 50% down payment of the amounts owed under the Second and Third Purchase Order, which Thirty Madison timely paid.

- 6 -

27.     From the period of November 2018 through February 2019, Thirty Madison incurred over $100,000 in expenses for component parts consisting of labels, boxes, and leaflets needed for the Minoxidil Products, which Thirty Madison delivered to Sterling so that Sterling could assemble the packages of Minoxidil Products.  These component parts were never returned to Thirty Madison and are believed to be in Defendants' possession to this day.

28.     The First, Second, and Third Purchase Orders (collectively, "the Purchase Orders") did not place any limitations on the amount or category of damages recoverable in the event of a breach.

29.     In brief, pursuant to the terms of their agreement and Defendants' ongoing repetition of the Pre-Order and Progress Representations, Thirty Madison ordered 300,000 bottles of Minoxidil Products.  Defendants accepted these orders and issued invoices to Thirty Madison. Thirty Madison paid $573,999 to Sterling as a down payment towards the purchase of Minoxidil Products.

30.     During the period of June 2018 through February 2019, Thirty Madison repeatedly advised Flynn Jr. and Sterling that its sale volume of Minoxidil Products was high and increasing, that its inventory of Minoxidil Products was running low and that Thirty Madison needed Sterling to timely fill the Purchase Orders in order to meet its customers' needs.

31.     In response to Plaintiff's explanation of its need for timely delivery of the Minoxidil Products, Flynn Jr. and Sterling confirmed they understood the Minoxidil Products were needed timely and repeatedly told Plaintiff that: (a) Sterling had been approved to manufacture and ship the Minoxidil Products; (b) manufacturing was ongoing; and (c) ultimately that Minoxidil Products had been manufactured and were on their way to Thirty Madison's designee (the "Post Order Representations").

32.     The following list includes just some of the examples of the Post-Order Representations made by Flynn Jr. and Sterling:

- In an email dated Friday, October 5, 2018 and addressed to the President of Thirty Madison, Flynn Jr. stated that manufacturing would begin the following week: "we have mfg starting monday"

- In an email dated January 7, 2019, Flynn Jr. wrote "We are closing out the lot with approximately 4800 units."

- In an email dated January 8, 2019, Flynn Jr. stated "They are just final reviewing the 4800 batch record."

- In an email chain dated January 14, 2019, Flynn Jr. sent an email stating "They are working on it going out today. We have some additional operators coming in this week as temporaries to help with assembly."

- In a text dated February 1, 2019 from Flynn Jr. to the President of Thirty Madison, Flynn Jr. stated, "Next shipment is leaving now and auditor said they will have audit finished shortly."

- In a text message dated February 4, 2019, Flynn Jr. wrote "Spoke to the reviewer he is complete couple of items he is getting clarification on but very close to approving."

- In a subsequent text dated February 4, 2019, Flynn Jr. stated "Second truck will be in Lakeland by morning."

- In an email dated February 15, 2019, Flynn Jr. stated "lots 4897, 4903, 4905 are the lots on the way to eagle pharmacy, lot 4909 is being kitted up for shipment, 4913 is

bottled and in line to be kitted, lot 4916 is weighed to be mixed tues primary package on weds, thurs."

- On February 16, 2019, a person ostensibly named Paul Sudakar, who was working with Sterling, sent an email to Thirty Madison's President and Flynn Jr. stating "I checked our gateway this morning and the status has been changed from pending to approved.  We should get a confirmation letter in the next few days at 109 but we are officially approved to release product."

33.     Examples of the text messages sent by Flynn Jr., on behalf of himself and Sterling, representing to Thirty Madison's President that the Minoxidil Products were en route on or about February 19-20, 2019, include the following:

- "I am working on the truck it is in Florida, having an issue with the trucking firm"

- "He is still 140 Miles away."

- "The truck should be there based on timing."

- "Broker says still scheduled getting drivers [sic] number to catch up to him."

- "Getting location now they are pinging truck whatever that means"

- In response to a text from Thirty Madison's President expressing his growing concern and need for the product shipment, Flynn Jr. stated "I know we need it there"

34.     As part of the Post-Order Representations, Defendants even went so far as to present to Thirty Madison a bill of lading signed by Sterling employee Renee Mushill and purportedly counter-signed by carrier Best Way Freight (identified on the bill lading as "est Way Freight") to acknowledge Best Way's receipt of 7 pallets of Minoxidil Products requested in the First Purchase

Order for shipping. Upon information and belief, Defendants falsified this document as part of their ongoing efforts to defraud Plaintiff.

35.    Based on the Progress and Post-Order Representations that the Minoxidil Products were being manufactured, and ultimately had been manufactured and were on trucks en route to Plaintiff's designee, Thirty Madison reasonably believed that the Minoxidil Products it ordered and needed to fulfill contractual agreements with its customers would be arriving and that it did not need to search for alternative suppliers.

36.    On information and belief, however, Defendants' Pre-Order, Progress, and Post Order Representations were false and were known to be false when made.

37.    Indeed, on further information and belief, Sterling was not manufacturing the Minoxidil Products on the schedule reported to Plaintiff and may not have been manufacturing the Minoxidil Products at all.

38.    Upon information and belief, Sterling did not ship any Minoxidil Products in February of 2019 and likely did not have any Minoxidil Products to ship.

39.    To the contrary, on information and belief, Defendants took Plaintiff's money under false pretenses, including the Pre-Order and Progress Representations, and made the Post-Order Representations to deceive Plaintiff into believing that the Minoxidil Products were on their way.

40.    As a result of Defendants' actions, Plaintiff did not receive timely delivery of the Minoxidil Products and has not received any of the Minoxidil Products to date.

41.    Defendants actions have caused significant injury to Plaintiff, including, but not limited to, the loss of over $500,000 paid for the Minoxidil Products, the loss of tens of thousands of dollars paid for labels, boxes and leaflets that Plaintiff purchased and had delivered to Sterling for

the assembly of the Minoxidil Products, hundreds of thousands of dollars in rebates and credits Plaintiff has paid and given to customers to whom it could not ship Minoxidil Products, profits lost during the period that customers were seeking and would have been able to purchase the Minoxidil Products from Thirty Madison but for Sterling's conduct, injury to Plaintiff's relationship with its customers, and injury to Plaintiff's reputation with customers and prospective customers.

**COUNT I**
**BREACH OF CONTRACT**
**Thirty Madison v. Sterling**

42.     Plaintiff restates and incorporates the allegations and averments of paragraphs 1-41 as if fully set forth herein.

43.     Thirty Madison entered into a number of purchase order contracts with Sterling pursuant to which Thirty Madison agreed to purchase and Sterling agreed to provide, specific quantities of Minoxidil Products within a reasonable time to a specified address in exchange for a purchase price of $1,147,998 Sterling submitted invoices to Thirty Madison for payment of 50% of the purchase price, which were paid by Thirty Madison as a down payment.

44.     In addition to paying over $500,000 in down payments for the Minoxidil Products, Thirty Madison supplied Sterling with the boxes, labels and leaflets ("Components") necessary for Sterling to assemble the packages for the Minoxidil Products.

45.     Despite repeated promises and assurances, Sterling has failed and refused to deliver the Minoxidil Products called for in the Purchase Orders and has kept Plaintiff's down payments.

46.     Sterling's actions constitute a breach of contract, have caused and continue to cause damages to Thirty Madison in an amount to be demonstrated at trial, including, but well more than, the approximately $573,999 advanced on the Minoxidil Products.

## COUNT II
## FRAUD
**Thirty Madison v. Sterling, Flynn Sr. and Flynn Jr.**

47.     Plaintiff restates and incorporates the allegations and averments of paragraphs 1-46 as if fully set forth herein.

48.     The statements made by Sterling and Flynn Jr., including both the Pre-Order Representations, the Progress Representations, and the Post-Order Representations as well as the falsified bill of lading, were fraudulent in that they (i) were false, (ii) were known by Defendants to be false when made, (iii) were intended to induce action and inaction by Plaintiff, including but not limited to entering into the Purchase Orders and delaying recognition of Sterling's breach of contract and fraud, (iv) were reasonably relied on by Plaintiff, and (iv) caused injuries to Plaintiff.

49.     On information and belief, the fraudulent statements and documents were made as part of a conspiracy between Sterling, Flynn Jr., Flynn Sr. and potentially others to defraud Plaintiff.

50.     The fraudulent statements have caused and continue to cause Thirty Madison damages in an amount to be demonstrated at trial.

## COUNT III
## CIVIL CONSPIRACY
**Thirty Madison v. Sterling, Flynn Sr. and Flynn Jr.**

51.     Plaintiff restates and incorporates the allegations and averments of Paragraphs 1-50 of this Complaint as if fully set forth herein.

52.     Beginning at least by July of 2018, and possibly before, and continuing through the time of this filing, upon information and belief, Defendants conspired among themselves and possibly with others at Sterling with the intent to defraud Plaintiff.  Specifically, on information and belief, each of the Defendants was aware that Sterling would not be able to manufacture the

Minoxidil Products but devised a scheme whereby Plaintiff would be told that Sterling was able to and was actively manufacturing the Minoxidil Products in order to obtain over $500,000 dollars from Plaintiff.

53.     In furtherance of the conspiracy, Defendants made multiple false statements to Plaintiff regarding the existence, status and location of the Minoxidil Products, going as far as to manufacture a false Bill of Lading and recount exchanges with third party shippers regarding the exact location of the nonexistent Minoxidil Products, in a successful effort to illegally obtain over $500,000 in payments from Plaintiffs.

54.     As a direct result of these wrongful acts, Plaintiff has suffered, and will continue to suffer monetary damages in an amount to be proven at trial.

## COUNT IV
## UNJUST ENRICHMENT
### Thirty Madison v. Sterling, Flynn Sr. and Flynn Jr.

55.     Plaintiff restates and incorporates the allegations and averments of Paragraphs 1-54 of this Complaint as if fully set forth herein.

56.     While Plaintiff believes that the parties entered into contracts for the Minoxidil Products and that it is entitled to remedies for breach of those contracts, if the Court determines that no valid contract existed, Defendants have been unjustly enriched by the $573,999 paid by Plaintiff as well as the labels, boxes, and leaflets supplied by Plaintiff for the Minoxidil Products that were never manufactured or received.

57.     The circumstances are such that Defendants' enrichment is unjust and principles of equity and justice require that all Components be returned and all money paid by Plaintiff to Defendants be repaid with interest and any further damages and relief deemed appropriate.

- 13 -

**COUNT V**
**MONEY HAD AND RECEIVED**
**Thirty Madison v. Sterling, Flynn Sr. and Flynn Jr.**

58.     Plaintiff restates and incorporates the allegations and averments of Paragraphs 1-57 of this Complaint as if fully set forth herein.

59.     Defendants have obtained money through the payments from Thirty Madison. Although Thirty Madison believed the amounts paid were properly owed when paid, Defendants were never entitled to such payment.

60.     The circumstances are such that Defendants should not be allowed to retain this money and should be required to repay it to Thirty Madison.

61.     As such, Defendants are liable to Plaintiff for money had and received in an amount to be demonstrated at trial.

**COUNT VI**
**PUNITIVE DAMAGES**
**Thirty Madison v. Sterling, Flynn SR. and Flynn Jr.**

62.     Plaintiff restates and incorporates the allegations and averments of Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     Defendants' actions demonstrate that intentional or willful misconduct and an entire want of care or indifference to consequences, so as to justify an award of punitive damages.

**JURY DEMAND**

Thirty Madison hereby demands a jury trial on all issues triable by a jury pursuant to Federal Rule of Civil Procedure 38.

**WHEREFORE**, Plaintiff Thirty Madison respectfully prays:

a.     That it have trial by jury on all appropriate Counts of this Complaint;

b.      That it receive damages in an amount to be proven at trial for Defendants' breach of

contract, unjust enrichment and/or money had and received;

c.      That it receive damages for Defendants' fraud in an amount to be proven at trial;

d.      That it receive punitive damages in an amount determined by the enlightened

consciousness of the jury;

h.      That it receive such other and further relief as is deemed necessary and just.

Respectfully submitted this 22nd day of March, 2019.

**HEPLERBROOM LLC**

By: /s/ W. Jason Rankin
    W. Jason Rankin, #6237927
    130 N. Main Street
    P.O. Box 510
    Edwardsville, IL 62025
    Phone: 618-307-1184
    Fax: 618-656-1364
    wjr@heplerbroom.com

**BAKER DONELSON BEARMAN**
**CALDWELL & BERKOWITZ, PC**
    Steven G. Hall, Esq.*
    Georgia Bar No. 319308
    Robert G. Brazier, Esq.*
    Georgia Bar No. 078938
    Kristin S. Tucker*
    Georgia Bar No. 805833
    Monarch Plaza, Suite 1600
    3414 Peachtree Road, N.E.
    Atlanta, Georgia  30326
    Telephone:  (404) 577-6000
    Facsimile:  (404) 221-6501
    (*Pro Hac Vice anticipated)

*Attorneys for Plaintiff Thirty Madison, Inc.*